UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ashley Furniture Industries, Inc.,

      Plaintiff,

-v-                                      Case No. 2:11–cv–427

American Signature, Inc.,                Judge Michael H. Watson

      Defendant.

## OPINION AND ORDER

The parties in this action compete against each other in the upholstered furniture industry.  Plaintiff uses professionally-produced photographs of its furniture for advertising.  Defendant acquired some of those photographs from Plaintiff's website and then used the photographs in its own advertisements, which compared Plaintiff's more expensive furniture to Defendant's similar-appearing but less expensive furniture.  Plaintiff asserts that in doing so, Defendant violated federal copyright and trademark law, as well as state law prohibiting unfair competition.  Defendant moves for summary judgment on Plaintiff's copyright claims, arguing that using Plaintiff's photographs for comparative advertising falls within the fair use exception to copyright law's general prohibition against copying original expressive works.  ECF No. 87.  The Court agrees and grants Defendant's motion.

# I. BACKGROUND

Plaintiff Ashley Furniture Industries, Inc. ("Ashley") sells its furniture through 400 of its own retail stores in addition to 6,000 independent retailers in the United States.  Defendant American Signature, Inc., dba Value City Furniture ("Value City") operates 128 retail furniture stores in which it sells other companies' furniture.  Defendant Value City sold Ashley furniture in the past but no longer does so.

Ashley pays professional photographers to create images of its furniture to use in its own advertising and also provides the photographs to independent retailers at no cost.  Fifteen such images are at issue in the present case.  Ashley obtained copyright registration for those images.

In 2010 and 2011, Value City obtained the copyrighted images of Ashley's furniture from Ashley's website.  Value City then used those photographs in its own advertisements.  Some of the advertisements contained one of Ashley's copyrighted photographs alongside a photograph of a purportedly comparable item of furniture that Value City sells in its own stores.  This is referred to as "comparative advertising."  Value City displayed the comparative advertisements on websites, in newspapers, and in store handouts.  It also emailed the advertisements to potential customers.

In addition, Value City used Ashley's copyrighted photographs in "Red Arrow" point-of-sale advertisements.  The Red Arrow ads used copyrighted

photos of Ashley furniture as well as the specifications for that furniture and Ashley's registered trademarks, all taken from Ashley's website.  The Red Arrow advertisements did not use a photograph of the product sold by Value City.  Rather, they were designed to be displayed at Value City stores alongside Value City's purportedly comparable items of furniture.  The Red Arrow ads asked consumers to "compare our price to Ashley Furniture Homestore."

Ashley asserts that Value City's comparative advertising was deceptive.  In support of that assertion, Ashley presents essentially three categories of evidence.

First, Ashley submits evidence of what it says are significant differences between its own, higher quality furniture and the lower priced furniture that Value City offered in the comparative advertisements.  Differences in quality include: (1) Ashley's use of genuine leather where the furniture Value City sold used imitation leather; (2) Ashley's use of precision cut wood joints where the furniture Value City sold had lower quality joints with gaps and misalignment; (3) Ashley's use of defect-free wood where the furniture Value City sold used wood with knots, cracks, and mold; (4) Ashley's use of high quality spring seating support where the furniture Ashley sells used less expensive webbing without springs; and (5) Ashley's use of virgin material for fill where the furniture Value City sold used recycled fill material.  Ashley also refers to the deposition testimony of three Value City store managers who expressed concern to Value City management

that the Value City products were not comparable to the Ashley products depicted in Value City advertisements.   Ashley maintains the testimony of the three store managers demonstrates that Value City knew that its own furniture was not comparable in quality to the Ashley furniture shown in the copyrighted photographs.

Second, Ashley submits evidence which it claims demonstrates that Value City's advertisements were an attempt by Value City to pass off the furniture it sold as having been made by Ashley.  Ashley retained an expert, OSU Professor of Marketing Rao Unnava.  Unnava conducted a survey to determine consumer perceptions of Value City's Red Arrow advertisements.  Fifty-seven percent of the respondents of the survey indicated that they believed Ashley made the furniture that Value City was attempting to sell through the Red Arrow advertisements. Unnava also performed a consumer survey for the advertisements that contained side-by-side photographs of Ashley's furniture and the furniture sold by Value City.  More than twenty-four percent of the respondents believed that Value City was selling the exact same furniture that Ashley HomeStores offer.

Moreover, Ashley maintains that Value City's use of the copyrighted photos gave consumers the false impression that Value City was selling Ashley furniture by extensively using Ashley's registered trademarks in the ads while failing to identify the brand of furniture being sold by Value City.  In other words, the only brand name appearing in the advertisements was Ashley's.

Third, Ashley presents evidence which it says demonstrates that Value City's comparative advertisements contained "literal falsehoods." Ashley contends Value City's advertisements falsely represented the prices of the furniture compared in the ads. Specifically, Ashley avers information in the ads was manipulated so as to overstate the price of furniture sold at Ashley HomeStores and understate the true price of furniture sold at Value City stores. Ashley asserts that Ashley HomeStores rely on discounting sales prices when they sell Ashley furniture, and those prices were often equivalent to or lower than the prices of the purportedly comparable furniture sold at Value City stores. The person at Value City who led the ad campaign stated Ashley's prices were sometimes "too close to VC's price" to be used in the comparative advertisements. For example, when one Value City store manager submitted a lower price for an item of Ashley furniture, he was instructed the price was unacceptable because it was "too close to ours," and he was told to search for a higher Ashley HomeStore price to use in the ads. In addition, Value City would sometimes lower its price for the purportedly comparable piece of furniture and use Ashley HomeStore's everyday, non sales price for comparison.

Furthermore, Ashley submits evidence purportedly showing that Value City's advertisements contained false visual depictions of Ashley furniture. In one comparative advertisement, Value City used a photograph of its McKinsley sofa next to a photograph of Ashley's Palmer sofa. The side by side photographs

make it appear that Value City's McKinsley sofa is the same width as, but taller than, the Ashley Palmer sofa, which cost $190 more than the Palmer. In reality, the Palmer sofa is significantly larger than the McKinsley. Nonetheless, Value City notes that the advertisement in question accurately represented that the Value City sofa was 89 inches wide and Ashley's sofa was 101 inches wide.

In 2010, Ashley brought a lawsuit against Value City based on the above factual allegations in federal district court in Chicago, Illinois. In the Chicago action, Ashley asserted claims against Value City for false advertising, unfair competition, and trademark infringement under the Lanham Act and analogous state law. The case was drawn by Senior Judge Milton I. Shader. Judge Shader expressed scepticism about Ashley's claims in his orders and on the record during a conference and a hearing. Those expressions never ripened to a final decision on the merits, however, and Ashley dismissed the Chicago action without prejudice.

Ashley filed the present action in May 2011. The original complaint set forth a single claim for copyright infringement. Compl., ECF No. 1. Less than one month later, and prior to discovery, Value City responded to the complaint by filing a motion for summary judgment. ECF No. 17. Ashley moved to defer ruling on Value City's summary judgment motion under Federal Rule of Civil Procedure 56(d). ECF No. 29. The Magistrate Judge granted that motion and ordered discovery to proceed. ECF No. 36. After discovery was complete, Value City

refiled its motion for summary judgment.  ECF No. 87.

In addition, with leave of Court, Ashley filed an amended complaint adding claims under the Lanham Act.  ECF No. 58.  Value City does not challenge those claims in the present summary judgment motion.

## II.  STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  *See also Van Gorder v. Grand Trunk Western R.R., Inc.*, 509 F.3d 265 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence.  *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986); *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir. 2011).  The Court disregards all evidence favorable to the moving party that the

jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods.,
Inc.*, 530 U.S. 133, 150–51 (2000). Summary judgment will not lie if the dispute
about a material fact is genuine, "that is, if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th
Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law.'" *Pittman*, 640 F.3d at 723 (quoting
*Anderson*, 477 U.S. at 251–52).

### III. DISCUSSION

Value City argues that it is entitled to summary judgment on Ashley's
copyright claims because, as a matter of law, Value City's use of Ashley's
photographs in its comparative advertising falls within the fair use exception to
the prohibition against copying another's original expressive work. Indeed, Value
City's motion relies entirely on the fair use defense.

Ashley contends that summary judgment is not appropriate because Value
City's comparative advertisements were false and deceptive, and, in the
alternative, Value City cannot satisfy the test for fair use.

Article I, Section 8 of the United States Constitution grants Congress the
power "[t]o promote the Progress of Science and useful Arts, by securing for

limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Art. I, § 8. To that end, the Copyright Act extends protection to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Original works include "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). Courts have long recognized that photographs are original works protected by copyright law. *See Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60–61 (1884) (holding copyright law protected photographer's rights in image of Oscar Wilde).

The Copyright Act provides that, as a general rule, the owner of a copyright has the exclusive right to reproduce, distribute, and display the copyrighted work. 17 U.S.C. § 106. The elements of a copyright claim are straightforward: (1) the plaintiff owns the copyright, and (2) the defendant copied original elements of the plaintiff's copyrighted work. In its summary judgment motion, Value City does not challenge Ashley's ability to prove the essential elements of a copyright claim. Rather, it argues that Ashley's copyright claim fails as a matter of law because utilizing Ashley's photographs in comparative advertising constitutes a "fair use."

Long before its codification in the Copyright Act, courts recognized the equitable doctrine of fair use as an important exception to the rights of the copyright holder. *See Cambell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994). Justice Story explained,

> [i]n truth, in literature, in science and in art, there are, and can be, few, if any, things, which in an abstract sense, are strictly new and original throughout. Every book in literature, science and art, borrows, and must necessarily borrow, and use much which was well known and used before."

*Id.* (quoting *Emerson v. Davies*, 8 F. Cas. 615, 619 (No. 4,436) (CCD Mass. 1845)). Thus, fair use promotes the arts by permitting new works to build upon those of the past. *See id.* To ensure fairness to the holder of the copyright, however, the common law doctrine examined several factors: "'look to the nature and objects of the selections made, the quantity and value of the materials used, and the degree in which the use may prejudice the sale, or diminish the profits, or supersede the objects, of the original work.'" *Id.* (quoting *Folsom v. Marsh*, 9 F. Cas. 342 (No. 4,901) (CCD Mass. 1841) (Story, J.)).

The Copyright Act of 1976 codifies the common law fair use doctrine as follows:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include-
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107. Fair use is a mixed question of law and fact. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). Moreover, fair use is an affirmative defense, so the party asserting it bears the burden of proof. *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1390 n.5 (6th Cir. 1996).

The fair use doctrine has been branded "'the most troublesome in the whole law of copyright.'" *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 475 (1984) (quoting *Dellar v. Samuel Goldwyn, Inc.*, 104 F.2d 661, 662 (2d Cir. 1939)). The test must be applied on a case-by-case basis without resort to simplified or bright-line rules. *Cambell*, 510 U.S. at 577. Instead, courts must consult all of the factors and weigh them together, treating them as general guidelines and keeping in mind the purposes served by copyright law. *Id.* at 577–78. The sole purpose of copyright law is to advance the arts for the benefit of society by providing some incentive to those who create original works by granting them a limited monopoly to reproduce, distribute, and display the copyrighted work. *See Sony Corp.*, 464 U.S. at 477. Nonetheless, that limited

monopoly yields to another's use of the copyrighted work that is fair in equity. *See id*. at 477–78. As Justice Story observed, permitting fair use likewise promotes the arts for the public good. *See Campbell*, 510 U.S. at 575 (quoting *Emerson v. Davies*, 8 F. Cas. 615, 619 (No. 4,436) (CCD Mass. 1845)).

Ashley asserts that before the Court addresses the four-factor test for fair use, it must first determine whether Value City is precluded from using that defense because Value City's comparative advertisements were false and deceptive.

Value City avers that determining whether the comparative advertisements were untruthful or deceptive is not analyzed separately from the statutory four-factor test, but rather, truthfulness is examined under the first factor, *i.e.*, the purpose and character of the use. In addition, Value City notes that Ashley cites trademark cases in support of its assertion that deception bars any fair use defense, and the United States Supreme Court has expressly warned against grafting Lanham Act principles into copyright law.

For the latter proposition, Value City cites *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003). *Dastar* involved a Lanham Act claim of "reverse passing off" of a television series created in 1949 based on General Dwight D. Eisenhower's 1948 book, *Crusade in Europe*. Dastar Corp. ("Dastar") copied, edited, and sold the television series, which was then in the public domain, as a video set under the name "World War II Campaigns in

Europe." It did so without crediting the originator of the series, Twentieth Century

Fox ("Fox"). Fox and the other plaintiff brought an action against Dastar,

asserting violations of the Copyright Act, the Lanham Act, and state unfair

competition law.

The Court in *Dastar* was tasked with interpreting the term "origin . . . of . . .

goods" in § 43 of the Lanham Act, which prohibits, among other things, falsely

designating the origin of goods, services, and commercial activities. *See* 15

U.S.C. § 1125(a)(1). In particular, the Court examined whether "origin" of goods

included, as Fox urged, the creator of the content embodied in a product.

Rejecting that interpretation, the Court compared and distinguished the different

protections afforded by trademark, copyright, and patent law:

> The problem with this argument according special treatment to
> communicative products is that it causes the Lanham Act to conflict
> with the law of copyright, which addresses that subject specifically. The
> right to copy, and to copy without attribution, once a copyright has
> expired, like "the right to make [an article whose patent has
> expired]—including the right to make it in precisely the shape it carried
> when patented—passes to the public." *Sears, Roebuck & Co. v. Stiffel
> Co.*, 376 U.S. 225, 230, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *see also
> Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 121–122, 59 S.Ct.
> 109, 83 L.Ed. 73 (1938). "In general, unless an intellectual property
> right such as a patent or copyright protects an item, it will be subject to
> copying." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23,
> 29, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). The rights of a patentee
> or copyright holder are part of a "carefully crafted bargain," *Bonito
> Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150–151, 109
> S.Ct. 971, 103 L.Ed.2d 118 (1989), under which, once the patent or
> copyright monopoly has expired, the public may use the invention or
> work at will and without attribution. Thus, in construing the Lanham Act,
> we have been "careful to caution against misuse or over-extension" of

trademark and related protections into areas traditionally occupied by patent or copyright. *TrafFix*, 532 U.S., at 29, 121 S.Ct. 1255. "The Lanham Act," we have said, "does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." *Id.*, at 34, 121 S.Ct. 1255. Federal trademark law "has no necessary relation to invention or discovery," *In re Trade–Mark Cases*, 100 U.S. 82, 94, 25 L.Ed. 550 (1879), but rather, by preventing competitors from copying "a source-identifying mark," "reduce[s] the customer's costs of shopping and making purchasing decisions," and "helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product," *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 163–164, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (internal quotation marks and citation omitted). Assuming for the sake of argument that Dastar's representation of itself as the "Producer" of its videos amounted to a representation that it originated the creative work conveyed by the videos, allowing a cause of action under § 43(a) for that representation would create a species of mutant copyright law that limits the public's "federal right to 'copy and to use'" expired copyrights, *Bonito Boats, supra*, at 165, 109 S.Ct. 971.

*Dastar*, 539 U.S. at 33–34. The argument *Dastar* rejected—the application of copyright principles to a Lanham Act claim—is reversed in the present case. Here, according to Value City, Ashley is attempting to graft Lanham Act principles of deception and unfair competition onto copyright law.

As Ashley notes, and Value City readily concedes, courts have referred to deception in comparative advertising when addressing fair use in *copyright* cases. *See Sony Computer Entm'nt Am. v. Bleem*, 214 F.3d 1022, 1027 (9th Cir. 2000); *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1176 n.13 (5th Cir. 1980). Hence, inquiry into falsity and deception is not exclusive to Lanham Act claims. Nonetheless, it would be improper to materially

alter the four-factor test by creating a dispositive, threshold inquiry for falsity and deception. The Supreme Court has rejected bright-line tests or treating any one of the four factors as dispositive in the fair use inquiry. *See Cambell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584–85 (1994). Accordingly, while the Court declines Ashley's invitation to deem falsity and deception as dispositive, it will consider those concepts when it addresses the first statutory factor.

## A. Purpose and Character of the Use

The first statutory factor examines "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). In addressing this factor, the Court considers whether the new work was transformative and whether the use of the work was for a commercial or noncommercial purpose. *Balsley v. LFP, Inc.*, 691 F.3d 747, 758 (6th Cir. 2012).

### 1. Commercial Use

Value City maintains that comparative advertising serves the public interest and is therefore indicative of fair use notwithstanding that such use is commercial. Ashley asserts Value City's use of the copyrighted photographs was commercial and weighs against a finding of fair use because the comparative advertisements were deceptive and involved passing off Value City's furniture as having been made by Ashley.

"[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright . . . ." *Sony Corp.*, 464 U.S. at 451. That presumption, however, is not a *per se* rule; rather, the Court must consider the commercial nature of the use along with other relevant factors, including the degree to which the use is transformative. *Cambell*, 510 U.S. at 583–84.

Two circuit courts have considered whether benefits of comparative advertisements overcome the presumption that commercial use weighs against a finding of fair use. *See Bleem*, 214 F.3d at 1027; *Triangle*, 626 F.2d at 1176 n.13. *Triangle* involved the use of a cover of a *TV Guide* magazine in a television commercial advertising a competing publication. The defendant asserted fair use. In analyzing the first factor, the Fifth Circuit observed:

> As § 107 makes clear, the first factor to consider in a fair use analysis is the purpose and character of the use. Here, Knight-Ridder used TV Guide covers for advertisements, and any commercial use tends to cut against a fair use defense. On the other hand, the precise characteristics of the commercial use in this case caution against too much weight being given to the fact that the use is commercial. Specifically, there was no attempt to palm off Triangle's product as that of the Herald's. Rather, the advertisement was a comparative advertisement done in a manner which is generally accepted in the advertising industry.

*Triangle*, 626 F.2d at 1175–76 (footnotes and internal citations omitted). The court further explained:

> As stated, the fact that the commercial use occurred in the course of a truthful comparative advertisement undercuts the significance of the

commercial nature of the use. Congress emphasized that the doctrine of fair use must be flexible. House Report, at 66; U.S.Code Cong. & Admin. News, at 5680; Senate Report at 62. Today, the public interest in comparative advertising is well-recognized. As the Federal Trade Commission has stated:

> The Commission has supported the use of brand comparisons where the bases of comparison are clearly identified. Comparative advertising, when truthful and nondeceptive, is a source of important information to consumers and assists them in making rational purchase decisions. Comparative advertising encourages product improvement and innovation, and can lead to lower prices in the marketplace. For these reasons, the Commission will continue to scrutinize carefully restraints upon its use.

16 C.F.R. § 14.15( c) (1980).

*Id.* at 1176 n.13. Hence, the court in *Triangle* gave diminished weight to the fact that the use of the *TV Guide* cover was commercial because the public interest is served by truthful comparative advertising, and the defendant's use was not an attempt to falsely pass off its own publication as plaintiff's. *See id.* By implication, had the comparative advertising in *Triangle* involved deception or passing off, the first factor would have weighed against a finding of fair use.

In *Bleem*, Sony brought a copyright action against the developer of software that permitted users to play Sony's console games on a personal computer. In its advertising, the software developer used screen shots to compare how the game appeared using the Sony PlayStation console with how it appeared on a personal computer screen with Bleem's software.

The Ninth Circuit in *Bleem* examined the first factor in light of *Triangle* and the FTC's statement on comparative advertising. 214 F.3d at 1027. It found persuasive the FTC's conclusion that truthful comparisons benefit consumers and outweigh any negative implications arising from commercial use. *Id.* Accordingly, it held:

> The first factor, considered in light of the animating principles of the copyright regime, weighs in Bleem's favor. Although Bleem is most certainly copying Sony's copyrighted material for the commercial purposes of increasing its own sales, such comparative advertising redounds greatly to the purchasing public's benefit with very little corresponding loss to the integrity of Sony's copyrighted material.

*Id.*

The upshot of *Triangle* and *Bleem* is simply that when comparative advertising is truthful and not a passing off of the copyrighted work, it serves the public interest and ameliorates the negative effect of commercial use on a finding of fair use. The two courts viewed the impact somewhat differently, however. The court in *Triangle* indicated that where comparative advertising is truthful, does not entail passing off, and is done in the manner generally accepted in the industry, the commercial nature of the use should not be given "too much weight." 626 F.2d at 1176; *see id.* n. 13 ("[T]he fact that the commercial use occurred in the course of a truthful comparative advertisement undercuts the significance of the commercial nature of the use."). Thus, in *Triangle*, the court apparently viewed commercial use as not weighing against a finding of fair use or at least

not weighing heavily against such a finding. In *Bleem*, the court concluded that the comparative advertising did not simply cancel the otherwise negative weight ascribed to commercial use; rather, it weighed in favor of a finding of fair use. 214 F.3d at 1027 (weighing first factor in Bleem's favor).

Ashley argues that Value City cannot rely on the fact that the advertisements were comparative because the comparative ads were deceptive in several respects and in some cases represent an attempt by Value City to pass off its own furniture as Ashley's. Value City contends that it did not attempt to pass off Ashley's *photographs* as its own, and that allegations that it was passing off its *furniture* as Ashley's are irrelevant to a copyright claim. In addition, Value City asserts that its comparative advertisements did not contain any literal falsehoods, and differences in the quality of the parties' furniture does not create a triable issue for a claim of copyright infringement.

There is no evidence that Value City represented to consumers that the *photographs* of Ashley's furniture were Value City's. Indeed, the inclusion of Ashley's trademarks with some of the photographs indicates there was no attempt to pass the photographs off as having been created by Value City. The Court agrees with Value City that for purposes of a copyright claim, the only relevant "passing off" would be of the copyrighted property, *viz.*, the copyrighted photographs. Very simply, copyright law protects Ashley's photographs, not Ashley's interest in selling the sofas depicted in the photos. As such, passing off

in this context would entail Value City's sale of copies of Ashley's photographs as its own, which did not occur.

*Triangle* and *Bleem* illustrate that point: both cases involved comparisons of copyrighted material—a magazine cover and the appearance of a video game screen—not a separate, underlying product. Passing off of Value City's furniture as Ashley's would be relevant to a Lanham Act claim. In particular, it would fall under the Lanham Act concept of false designation of origin. Applying Lanham Act principles to evaluate Ashley's copyright claim would run afoul of the Supreme Court's admonition against doing so in *Dastar*.

Ashley's evidence of alleged deception also misses the mark. Copyright law exists to advance the arts for the public benefit by granting the author a limited monopoly on the use of the original work. *See Sony Corp.*, 464 U.S. at 477. It does not exist to protect against unfair competition, deceptive trade practices, or consumer confusion. *See Nimmer on Copyrights* § 1.01[B][1][e] at 1-35 (2011) (difference between copyright and trademark or deceptive trade practices claims "is the element of misrepresentation or deception, which has no part of a cause of action for copyright infringement"). Once again, the Lanham Act addresses those concerns. *See Dastar*, 539 U.S. at 32 n.5; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992). Hence, allegations that Value City's comparative advertisements did not disclose differences in the quality of the furniture, contained inaccuracies as to pricing, and

led some consumers to believe that Value City was selling Ashley sofas are actionable, if at all, under the Lanham Act, not the Copyright Act.

In short, Value City's use of Ashley's copyrighted photographs in comparative advertisements did not entail passing off of those images as Value City's, nor did it involve deception about the copyrighted material. Consequently, the comparative nature of Value City's advertisements, which provided some benefit to consumers, reduces or negates the impact of commercial use on the first statutory factor.

### 2. Transformative Use

Ashley argues Value City's use was not transformative because Value City did nothing to alter the copyrighted photographs. Value City contends that using the photographs as components of comparative advertisements was transformative.

A use is transformative where it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. The more transformative a new work is, the less the commercial nature of the use weighs against a finding of fair use. *Id*.

The comparative advertisements at issue have a purpose different than the original copyrighted images. Using the copyrighted photographs alongside a photograph of a competing product (or the competing product itself) invites consumers to compare the products. Ashley's copyrighted photos, by

themselves, do not serve that purpose.

In that sense, the present controversy does not resemble the case upon which Ashley primarily relies for this issue, *Batesville Servs., Inc. v. Funeral Depot, Inc.*, No, 1:02–cv–1011, 2004 WL 2750253 (S.D. Ind. Nov. 10, 2004). In *Batesville*, unlike the instant case, the defendant used the copyrighted images to sell caskets manufactured by the plaintiff. The defendant was not using the photographs to sell competing products, and the case did not involve comparative advertising. Thus, the defendant was using the photographs for precisely the same purpose as the plaintiff. Here, in contrast, Value City's use of the copyrighted images in comparative advertisements serves a different purpose and was therefore transformative.

In sum, the Court holds that although Value City used the copyrighted images for a commercial purpose, the comparative advertising is transformative and provides some benefit to consumers. *See Bleem*, 214 F.3d at 1027. As a result, the negative impact of commercial use on a finding of fair use is undercut, and the impact of the first factor on the fair use analysis is neutral.

## B. Nature of the Copyrighted Work

Value City argues that the copyrighted photographs are more akin to fact-based works, and the second factor weighs slightly, if at all, against a finding of fair use. Ashley contends that the second factor weighs significantly against a finding of fair use because Ashley has invested substantial time and resources in

obtaining the photographs, and its photographers employed the creative process to produce the photos.  Ashley avers its photographers exercised creative judgment to determine the best lighting, color balance, effective angles, and placement of accessory items to make the furniture appear attractive to consumers.

The second fair use factor requires the Court to consider "the nature of the copyrighted work."  17 U.S.C. § 107(2).  "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."  *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985).

The Sixth Circuit Court of Appeals instructs that photographs exhibit varying degrees of creativity.  *Balsley*, 691 F.3d at 760.  *Balsley* involved a surreptitiously-taken photograph of a person who was partially nude.  The person depicted in the photograph and a relative obtained the copyright.  An adult-themed publisher later included the photograph in an issue of its magazine, and the copyright holders sued.  The matter proceeded to a jury trial, and the jury returned a verdict in favor of the copyright holders.

On appeal, the magazine publisher argued the district court erred by not granting its motion for judgment as a matter of law.  The Sixth Circuit disagreed and affirmed the judgment of the district court.  *Balsley*, 691 F.3d at 774.  In addressing the second fair use factor, the court explained: "The parties' arguments persuade us that the Bosley photograph possesses a mixed nature of

fact and creativity.  Consequently, the jury could reasonably find that this factor weighed in slight favor of Plaintiffs or, at the very least, its impact was neutral." *Id.* at 760.

Viewing the evidence in the light most favorable to Ashley, the Court finds that the photographs at issue contain factual and creative elements.  While they are factual depictions of Ashley furniture, the process of creating the photographs included decisions about lighting, camera angle, and arrangement of accessories. Moreover, creative judgment was exercised to select which photographs to use in Ashley's advertisements.  Indeed, although the copyrighted photographs at issue in this case depict comparatively mundane articles of furniture, they are at least as creative as the surreptitious grab shot at issue in *Balsley*.  The second factor therefore weighs modestly against a finding of fair use.

## C. Amount and Substantiality of the Work Copied

Value City suggests that its use of the entire copyrighted photographs was reasonable and in fact necessary so that consumers could make a fair comparison between Ashley's furniture and the Value City's products.  Ashley maintains that Value City could easily have created comparative advertisements without using Ashley's copyrighted photographs at all.

The third factor of the statutory test examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3).  Wholesale copying does not automatically preclude a finding

of fair use; it does, however, weigh against such a finding. *Balsley*, 691 F.3d at 760.  The larger the volume of the work that is copied, the greater the intrusion upon the interests of the copyright holder, and the less likely the use will be deemed fair. *Zomba Enter's, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 583 (6th Cir. 2007).

The Court finds merit in Value City's assertion that its use of Ashley's photographs in their entirety was fair because the photos were created to depict Ashley's furniture in the best possible light.  Further, use of anything less than the full images would not have given consumers a complete depiction of the items of furniture for comparison.  Moreover, while Value City could have produced its own images of Ashley's furniture, it stands to reason the result would not likely have portrayed Ashley's furniture as any more appealing to consumers than the copyrighted images.  Consequently, this is an unusual case in which the third statutory factor does not weigh against a finding of fair use despite the fact that Value City used the entire copyrighted photos.

## D. Effect on the Potential Market

Value City asserts that no market whatsoever exists for those photographs beyond Ashley.  Value City points to the deposition testimony of Ashley's Rule 30(b)(6) witness, Betty Wyss, who testified as follows:

> Q. Are you aware of any intent by Ashley to sell any of the photos that are contained in its database to any other party or person?

A. No.

Q. Has – to your knowledge, has Ashley ever explored that as a possibility; that is, selling its – its inventory of photos to any other person or entity?

A. No, not to my knowledge.

Q. To your knowledge, has Ashley ever investigated or explored whether or not a market for the purchase of those photos even exists?

A. Not that I'm aware of.

Wyss Dep. 140–41, ECF No. 91. In short, Ashley sells furniture, not photographs of furniture.

Ashley contends a market exists for the photographs. Specifically, Ashley maintains the photographs have value for its independent dealers, and the value is diminished by Value City's use of them in its comparative advertising. Notably, Ashley provides the photographs to the independent dealers at no cost.

The fourth statutory factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The Supreme Court has indicated that the fourth factor is most important to the fair use analysis. *Stewart v. Abend*, 495 U.S. 207, 238 (1990); *Harper & Row Publishers, Inc. v. Nation Enters., Inc.*, 471 U.S. 539, 566 (1985). The fourth factor:

> requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the

potential market" for the original. Nimmer § 13.05[A] [4], p. 13–102.61 (footnote omitted); accord, *Harper & Row*, 471 U.S., at 569, 105 S.Ct., at 2235; Senate Report, p. 65; *Folsom v. Marsh*, 9 F. Cas., at 349. The enquiry "must take account not only of harm to the original but also of harm to the market for derivative works." *Harper & Row*, *supra*, 471 U.S. at 568, 105 S.Ct., at 2234.

*Campbell*, 510 U.S. at 590.

The Sixth Circuit's decision in *Balsley*, which also involved the use of a copyrighted photograph, offers some guidance. The defendant in that case argued that its use of the photograph in its adult publication had no effect on the market because the plaintiffs, one of whom was the subject of the image, had no intention of selling it to others. Rather, plaintiffs obtained the copyright specifically to protect their privacy and prevent further publication. The Sixth Circuit rejected the defendant's argument, stating:

> We agree with Plaintiffs that their current desire or ability to avail themselves of the market for the Bosley photograph is immaterial to the issue outlined by the statute, namely, whether there is potential for an adverse effect on the market for the photograph should the challenged use become widespread. [*Harper & Row*, 471 U.S.] at 568, 105 S.Ct. 2218. Plaintiffs presented ample evidence of the vast market for the Bosley photograph, and they persuasively argued that Defendant's publication and sale of the picture "directly competed for a share of the market for" the Bosley photograph. *Id*. The jury would not be unreasonable in finding that this factor weighed in favor of Plaintiffs because Defendant failed to rebut the presumption that its publication of the Bosley photograph affected the market.

*Balsley*, 691 F.3d at 761. Thus, even though the plaintiffs in *Balsley* had no intention of accessing the market, the fact that a market existed for the photo weighed against a finding of fair use.

With these principles in mind, the Court rejects Ashley's suggestion that a market exists for the copyrighted photographs because Ashley provides them to its independent dealers. Like Ashley, Ashley's independent dealers sell furniture, not photographs of furniture. At best, Ashley's argument boils down to an assertion that Value City's use of the photos hurts the independent dealers' businesses. Such an allegation does not constitute evidence that a market or even potential market exists for Ashley's copyrighted images of its furniture. *See Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 544–45 (6th Cir. 2004) (impact on market for plaintiff's toner cartridges irrelevant to fourth fair use factor in case involving alleged infringement of plaintiff's copyrighted toner loading computer program used in the cartridges); *Nuñez v. Caribbean Intern. News Corp.*, 215 F.3d 18, 24 (1st Cir. 2000) (negative impact of defendant's use of plaintiff's photo on plaintiff's overall photography business irrelevant to fourth factor of fair use inquiry). The complete lack of any market for Ashley's photographs weighs substantially in favor of a finding of fair use.

## E. Balancing the Factors

The Court must now weigh the four factors together, mindful of the purposes served by copyright law. *Campbell*, 510 U.S. at 577–78. The goal of copyright law is to advance the arts for the benefit of society. It does so by providing some incentive to those who create original works by granting them a limited monopoly to reproduce, distribute, and display the copyrighted work. *See*

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 414, 431–32. Nonetheless, permitting fair use is also essential for the advancement of the arts, and hence, the public good. *See Campbell*, 510 U.S. at 575.

The Court has found that Value City's use of the copyrighted photographs in comparative advertisements provides some benefit to consumers, and the use is transformative. The impact of the first fair use factor is therefore neutral. The copyrighted photographs contain a mix of factual and creative elements, so the second factor weighs slightly against a finding of fair use. Moreover, in the unique circumstances this case presents, Value City's use of the copyrighted images in their entirety does not weigh against a finding of fair use and is essentially neutral.

The fourth factor—the effect of the use on the potential market for the copyrighted photographs—is most significant to the fair use analysis. *Stewart*, 495 U.S. at 238; *Harper & Row*, 471 U.S. at 566. Value City's use of the copyrighted photographs in its comparative advertisements did not have any adverse effect on the market for those photos because such a market simply does not exist.

Two of the statutory factors are neutral and one weighs slightly against a finding of fair use. Nonetheless, the most important factor weighs substantially in favor of a finding of fair use. The significance of the fourth factor cannot be overstated. The limited monopoly copyright law grants to the creators of original

works provides a concrete incentive through access to the relevant market. It follows that if no market or potential market exists for the original, then another's use of the images does not harm the copyright holder's interests or inhibit the incentive to produce original creative works. *Lexmark*, 387 F.3d at 544–45 (6th Cir. 2004).

Weighing the statutory factors together, the Court holds as a matter of law that Value City's use of Ashley's copyrighted photographs was fair. Value City is entitled to summary judgment in its favor on Ashley's copyright claim.

## IV. DISPOSITION

For the above reasons, the Court **GRANTS** Value City's motion for summary judgment. ECF No. 87. The Court **DISMISSES** Ashley's copyright claim with prejudice.

The Clerk shall remove ECF No. 87 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

_Michael H. Watson_

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**