## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Ashley Furniture Industries, Inc.,

     Plaintiff,

-v-                            Case No. 2:11–cv–427

American Signature, Inc.,           Judge Michael H. Watson

     Defendant.


## OPINION AND ORDER

     The parties, who are competitors, make and sell sofas.  This case involves, *inter alia*, Defendant's use, in its own advertising, of Plaintiff's trademarks and copyrighted photographic images of Plaintiff's sofas.  Plaintiff asserts claims for trademark infringement, and false advertising under federal law, as well as a state law claim for false advertising.  Am. Compl., ECF No. 58.   Defendant filed an amended counterclaim that includes claims for unfair competition under Ohio common law, violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), and false advertising under the federal Lanham Act.  Am. Counterclaim, ECF No. 72.  Plaintiff moves to dismiss Defendant's amended counterclaim.  ECF No. 118.  For the following reasons, the Court grants Plaintiff's motion to dismiss.

## I. BACKGROUND

Plaintiff Ashley Furniture Industries, Inc. ("Ashley") sells its furniture through 400 of its own retail stores in addition to 6,000 independent retailers in the United States.  Defendant American Signature, Inc., dba Value City Furniture ("Value City") operates 128 retail furniture stores in which it sells other companies' furniture.  Defendant Value City sold Ashley furniture in the past but no longer does so.

In 2010 and 2011, Value City obtained the copyrighted images of Ashley's furniture from Ashley's website.  Value City then used those photographs in its own advertisements.  Some of the advertisements contained one of Ashley's copyrighted photographs alongside a photograph of a purportedly comparable item of furniture that Value City sells in its own stores.  This is referred to as "comparative advertising."  Value City displayed the comparative advertisements on websites, in newspapers, and in store handouts.  It also emailed the advertisements to potential customers.

In 2010, Ashley brought a lawsuit against Value City based on the above factual allegations in federal district court in Chicago, Illinois.  In the Chicago action, Ashley asserted claims against Value City for false advertising, unfair competition, and trademark infringement under the Lanham Act as well as analogous state law.  The case was drawn by Senior Judge Milton I. Shader.  Judge Shader expressed scepticism about Ashley's claims in his orders and on

the record during a conference and a hearing.  Those expressions never ripened to a final decision on the merits, however, and Ashley dismissed the Chicago action without prejudice.

Ashley filed the present action in May 2011.  The original complaint set forth a single claim for copyright infringement.  Compl., ECF No. 1.  Less than one month later, and prior to discovery, Value City responded to the complaint by filing a motion for summary judgment.  ECF No. 17.  Ashley moved to defer ruling on Value City's summary judgment motion under Federal Rule of Civil Procedure 56(d).  ECF No. 29.  The Magistrate Judge granted that motion and ordered discovery to proceed.  ECF No. 36.  After discovery was complete, Value City refiled its motion for summary judgment.  ECF No. 87.   In June 2014, the Court issued an Opinion and Order granting Value City's motion for summary judgment on Ashley's federal copyright claim.  ECF No. 121.  Although the Court ruled in Value City's favor, Ashley's copyright claim was at the very least colorable.

Value City brings a counterclaim against Ashley alleging claims for: (1) unfair competition under Ohio common law; (2) violations of the ODTPA; and (3) false advertising in violation of 15 U.S.C. § 1125(a).

In Count One of its counterclaim, Value City asserts that Ashley has engaged in unfair competition in violation of Ohio common law.  Count One relates to Ashley's attempts to litigate its claims against Value City.  Value City alleges that Ashley engaged in unfair competition by filing a lawsuit against Value

City in August 2010 in the United States District Court for the Northern District of Illinois, Chicago, by arguing in the present lawsuit that it needed discovery to respond to Value City's motion for summary judgment on Ashley's copyright claim, and by filing the instant lawsuit when Ashley knew its claims were baseless. In large part, the allegations supporting this claim consist of accusations that Ashley made misrepresentations to this Court.

Value City also brings claims for alleged violations of the ODTPA and the Lanham Act. Specifically, Value City asserts that advertisements for Ashley's furniture contain false and misleading information about the prices for that furniture. Value City provides seven examples of purportedly false advertisements. Amend. Counterclaim, ¶¶ 93–99, ECF No. 72. All of the examples involve items of furniture offered at a "sale" price along with one or more higher prices for comparison. In several of the examples, the item of furniture was featured several months later in one or more advertisements with different "regular" and "compare" prices. In addition, Ashley's advertisements included "one day" sales and "limited quantity" sales, but the items in those sales were offered on multiple occasions. Several advertisements also contain a statement that the items were discounted by a specific amount or percentage, but the advertisements do not identify the nature of the higher price, such as whether the higher price was Ashley's regular price or a competitor's price. Value City alleges, "upon information and belief," that the "sale" prices in the advertisements

are in reality Ashley's regular prices, and the "regular" prices are artificially inflated prices created for the purpose of claiming a discounted price in the advertisements.

Ashley moves to dismiss Value City's counterclaims for failure to state a claim. ECF No. 118.

## II. MOTION TO DISMISS

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557–58 (internal citations omitted).

## III. DISCUSSION

### A. Ohio Common Law Unfair Competition

Value City asserts that Ashley engaged in unfair competition in violation of Ohio common law by filing the prior lawsuit against Value City in Chicago, by seeking discovery to respond to Value City's motion for summary judgment, and by filing the present lawsuit. The allegations supporting these claims consist of remarks made by the district judge in the prior action and alleged misrepresentations Ashley made to the Court in the course of the present litigation.

Ashley contends Value City's unfair competition claim fails because Value City fails to plausibly plead that Ashley's initiation of litigation was objectively baseless. It further argues that Value City's counterclaim is barred by the *Noerr-Pennington* doctrine, which provides immunity against claims that might chill

exercise of the First Amendment right to seek redress of grievances through litigation. In addition, Ashley argues Value City's state law claim based on Ashley's conduct in federal court is preempted by federal law.

Value City maintains that it has plausibly pleaded that Ashley's legal actions were objectively baseless. In addition, it contends that the *Noerr-Penntington* defense cannot be determined on the pleadings. Value City also argues federal law does not preempt its unfair competition claim.

"Ohio common law recognizes a claim for unfair competition based on malicious litigation." *All Metal Sales, Inc. v. All Metal Source, LLC*, No. 1:10–cv–2343, 2011 WL 867020, at *2 (N.D. Ohio Mar. 11, 2011) (citing *Water Mgmt. Inc. v. Stayanci*, 15 Ohio St. 3d 83, 472 N.E.2d 715, 715 (Ohio 1984); *Microsoft Corp. v. Action Software*, 136 F. Supp. 2d 735, 740 (N.D. Ohio 2001)). "Unfair competition may include 'unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another.'" *Hua-Cheng Pan v. Kohl's Dept. Stores, Inc.*, No. 2:12–cv–1063, 2013 WL 5181144, at *8 (S.D. Ohio Sept. 12, 2013) (quoting *Water Mgmt.*, 15 Ohio St. 3d at 85). "To successfully establish an unfair competition claim based upon legal action, a party must show that the legal action is objectively baseless and that the opposing party had the subjective intent to injure the party's ability to be competitive." *Am. Chem. Soc. v.*

*Leadscope, Inc.*, 133 Ohio St. 3d 366, 367 (2012) (syllabus ¶ 1). Thus, in order

to succeed on its unfair competition claim, Value City must plausibly plead

(1) that Ashley engaged in litigation against Value City that was objectively

baseless, and (2) that Ashley did so with the subjective intent to injure Value

City's ability to compete. *Id.*

> Ashley also seeks dismissal based on *Noerr-Pennington* immunity.

> Under the Petition Clause of the First Amendment to the U.S. Constitution, private actors have the right to petition the government for action. U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). Where private actors petition the government for action that would violate antitrust law, the Petition Clause immunizes the actors from litigation in connection with their petitioning. Under these circumstances, private immunization from alleged violations of the Sherman Act is known as the *Noerr-Pennington* doctrine.

*VIBO Corp., Inc. v. Conway*, 669 F.3d 675, 683–84 (6th Cir. 2012). "Although the

*Noerr–Pennington* doctrine was initially recognized in the antitrust field, the

federal courts have by analogy applied it to claims brought under both state and

federal laws, including common law claims of tortious interference." *Campbell v.*

*PMI Food Equip. Gp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007). Value City does

not dispute that *Noerr–Pennington* applies to its Ohio common law claim for

unfair competition.

The *Noerr-Pennington* immunity doctrine contains a narrow exception

insofar as the immunity does not apply to sham lawsuits filed for the purpose of

interfering with competition. *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 697 F.3d 387, 408 (6th Cir. 2012). To constitute sham litigation,

> [f]irst, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor," through the "use [of] the governmental process—as opposed to the outcome of that process—as an anti competitive weapon."

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993) (quoting *Noerr*, 365 U.S. at 144; *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991)).

An Ohio common law claim of unfair competition based on the filing of a sham lawsuit requires the party advancing the claim to plausibly plead that the lawsuit was objectively baseless. *Leadscope, Inc.*, 133 Ohio St. 3d at 367. Similarly, a claimant must show the lawsuit against it was objectively baseless in order to defeat *Noerr-Pennington* immunity under the sham litigation exception to that doctrine. *Prof'l Real Estate Investors*, 508 U.S. at 60–61. Hence, in this case, the Court must examine whether Value City has adequately pleaded Ashley's lawsuits are objectively baseless in connection with both grounds for dismissal.

The Court agrees with Ashley that Value City has failed to plausibly plead that the two lawsuits Ashley filed against Value City were objectively baseless. First, the Court rejects Value City's suggestion that *Noerr-Pennington* immunity can never be addressed at the pleading stage. Courts in the Sixth Circuit have routinely dismissed claims under the *Noerr-Pennington* doctrine for failure to adequately plead the sham litigation exception. *See Agema v. City of Allegan*, No. 1:12–cv–417, 2014 WL 249374 (W.D. Mich. Jan. 22, 2014); *GMA Cover Corp. v. Saab Barracuda LLC*, No. 4:10–CV–12060, 2012 WL 642739 (E.D. Mich. Feb. 08, 2012); *New Day Farms, LLC v. Board of Trustees of York Tp., Ohio*, No. 2:08–cv–01107, 2009 WL 4016480 (S.D. Ohio Nov. 17, 2009); *MSC.Software Corp. v. Altair Engineering, Inc.*, No. 07–12807, 2009 WL 2923075 (E.D. Mich. Sept. 10, 2009).

In support of its argument that *Noerr-Pennington* immunity cannot be addressed on a motion to dismiss, Value City relies primarily on a single decision by another branch of this Court. *The Scooter Store, Inc. v. Spinlife.Com, LLC*, 777 F. Supp. 2d 1102, 1115 (S.D. Ohio 2011) ("[W]hether a party's conduct is a genuine attempt to avail itself of the judicial process or is merely a sham is a question of fact that is inappropriate for a motion to dismiss."). Nonetheless, the decision *The Scooter Store* cites for that proposition examined the sham exception in the context of summary judgment. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1252–53 (9th Cir. 1982).

Indeed, in *Clipper Exxpress*, the party asserting the sham exception had sufficiently demonstrated the protest at issue was baseless, and the intent of the party asserting immunity was "assumed." *Id.* The court indicated that whether protest was genuinely intended to influence the government is a question of fact. *Id.* at 1253. Thus, the question of fact in *Clipper Exxpress* concerned the subjective *intent* prong of the sham exception. In contrast, whether a lawsuit is objectively baseless may be decided as a question of law. *Regional Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc.*, 960 F. Supp. 2d 958, 979 (D. Minn. 2013). Therefore, the reluctance to grant the motion to dismiss in *The Scooter Store* likely pertained to the subjective intent element of the sham litigation exception. Here, in contrast, the Court's inquiry is focused on whether Ashley's lawsuits were objectively baseless.

Value City also makes much of the fact that Ashley's attorneys, representing a different client, opposed the dismissal of the claim in *The Scooter Store* by successfully arguing that the sham exception to *Noerr-Pennington* could not be determined in that case on the pleadings. That fact has no legal significance whatsoever to the present lawsuit. This is not a case where judicial estoppel or similar legal principle applies to Ashley's *Noerr-Pennington* defense. Irony, if it can even be called that, is not a ground for denying a Rule 12(b)(6) motion.

The Court finds Value City has not plausibly pleaded that Ashley's lawsuits were objectively baseless.  Rather than attempt to plead facts showing that Ashley's lawsuits were objectively baseless, Value City focuses on comments made by Judge Shader in the Chicago lawsuit and alleged misrepresentations Ashley has made to this Court.

Indeed, the first several pages of Ashley's counterclaim are devoted to Judge Shader's expressions of doubt about the merits of Ashley's copyright claim.  Value City goes so far as to represent that Judge Shader "held" that Ashley's claim had no merit.  Amend. Counterclaim ¶ 18, ECF No. 72.  Not so.  Judge Shader never "held" Ashley's claim lacked merit.  At most, Judge Shader expressed skepticism but never reached the merits of Ashley's claim.  Judge Shader's incredulity simply does not remotely give rise to a plausible inference that Ashley's lawsuit was objectively baseless.  Moreover, even if Judge Shader had reached the merits, an adverse ruling does not establish that a claim is objectively baseless.  *Prof'l Real Estate Investors*, 508 U.S. at 60.

Value City's counterclaim goes on to aver that Ashley deceived this Court in connection with discovery.  Even assuming that is true, it falls far short of giving rise to an inference that the present lawsuit was objectively baseless.  Value City cites no authority for the proposition that discovery abuses are actionable through an Ohio common law claim for unfair competition.  Further, for purposes of demonstrating the sham exception to *Noerr-Pennington* immunity, Value City

must show that the *entire* lawsuit was baseless, not merely one claim or action. *MSC.Software*, 2009 WL 2923075, at *1–2. Value City does not even attempt to plead that Ashley's lawsuits were objectively baseless in their entirety.

The remainder of Value City's unfair competition claim focuses on Ashley's alleged deceptive representations made in connection with its motion for leave to amend, including Ashley's representation that discovery provided the bases for new claims. Value City also alleges that a consumer survey Ashley conducted was flawed, and that Ashley misrepresented to the Court that the survey could not have been undertaken earlier. These purported misrepresentations, while potentially sanctionable, do not give rise to a plausible inference that the present lawsuit is objectively baseless in its entirety. *See id.*

In short, Value City utterly fails to plausibly plead that the lawsuits Ashley filed against it were objectively baseless. For that reason, Ashley is entitled to dismissal of Value City's Ohio common law claim for unfair competition.

In the alternative, the Court holds that federal law preempts Value City's common law unfair competition counterclaim. Value City's unfair competition counterclaim consists largely of Ashley's alleged misrepresentations to this Court. Federal Rule of Civil Procedure 11 expressly governs the kind of representations Ashley made to the Court and provides for sanctions in the case of misrepresentations concerning claims or defenses. Fed. R. Civ. P. 11(b)(2). Rule 11 also contains a safe harbor provision that allows a litigant to withdraw a

representation within twenty-one days.  Fed. R. Civ. P. 11(c)(1)(A).  Ohio

common law unfair competition does not contain such a safe harbor provision.  It

therefore directly conflicts with federal law and is preempted.  *First Bank of

Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 529–30 (6th Cir. 2002).

For this additional reason, the Court dismisses Value City's Ohio common law

claim for unfair competition based on Ashley's conduct in federal court.

### B. Ohio Deceptive Trade Practices Act and Lanham Act

Value City also brings claims under the ODTPA and Lanham Act for

alleged false advertising.  Value City maintains that Ashley's advertisements

contained false and misleading representations about the prices of Ashley's

furniture.

Ashley argues that Value City has failed to plead facts to support a

plausible inference that any of the advertisements featuring Ashley's furniture

were literally false or misleading.  In addition, Ashley argues ASI failed to

plausibly plead the essential elements of a false advertising claim.

The ODTPA states in relevant part:

> A person engages in a deceptive trade practice when, in the course
> of the person's business, vocation, or occupation, the person does
> any of the following:
> . . .
> Makes false statements of fact concerning the reasons for, existence
> of, or amounts of price reductions; . . . .

Ohio Revised Code § 4165.02(A)(12).

Ashley also asserts a claim under the Lanham Act, which states:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

. . .

in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a).

A claim under the ODTPA is treated the same as a claim for false advertising under the Lanham Act. *Stilson & Associates, Inc. v. Stilson Consulting Grp., LLC*, 129 F. App'x 993, 994 (6th Cir. 2005) ("The standard applicable to Lanham Act claims governs Plaintiffs' . . . claims under the Ohio Deceptive Trade Practices Act . . . .") (internal citations omitted).  Under either statute, to prevail a plaintiff must prove: (1) the defendant made false or misleading statements of fact concerning either its own or another's product; (2) the statements actually or tend to deceive a substantial portion of the intended audience; (3) the statements are material in that they will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; (5) there is some causal link between the challenged statements and harm to the plaintiff. *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).

Value City provides seven examples of purportedly false advertisements that appeared in central Ohio newspapers. Amend. Counterclaim ¶¶ 93–99, ECF No. 72. The examples describe advertisements for furniture offered at a "sale" price with one or more higher prices for the consumer to compare. Value City alleges that the same items of furniture were depicted in later advertisements with different "regular" and "compare" prices, and that those prices were sometimes higher or lower than the "regular" and "compare" prices stated in earlier advertisements.[1] Other advertisements contained a statement that the item was discounted by a specific amount or percentage, but those advertisements did not indicate the nature of the higher comparison price, such as whether the higher price was Ashley's regular price or a competitor's price.[2] In addition, some

_____

[1]Paragraph 93 of Value City's Amended Counterclaim states:

> For example, the Ashley Counterclaim Defendants caused, approved, permitted, authorized, and/or ratified placement of an advertisement in November 2011 that offered for sale a particular sofa combined with a "free loveseat with purchase of sofa" for a total price of $397 and represented that the "compare" price was $1,159.98. The advertisement represented that the offer was for "1 DAY – FRIDAY ONLY" and that there were "ONLY 100 SETS TO SELL" and "limit 1 per household." In January 2012, the Ashley Counterclaim Defendants caused, approved, permitted, authorized, and/or ratified placement of an advertisement offering for sale the same sofa with the same "free loveseat with purchase of sofa" for the same price of $397 and represented that there was a "LIMITED QUANTITY" and that the "compare" price was $1,959.98 – or $800 higher than the previous "compare" price.

Amend. Counterclaim ¶ 93, ECF No. 72.

[2]Paragraph 94 of Value City's Amended Counterclaim states:

As another example, over a time period extending at least from June 2010

advertisements offered the same item for sale on a "one day only" or "limited quantity" basis on multiple occasions.  Furthermore, Value City asserts, "upon information and belief," that the "sale" prices in the advertisements are in reality the regular prices, and the "regular" prices are artificially inflated prices created for the purpose of claiming a discounted price in the advertisements.  *Id.* ¶ 100.

Ashley contends that the above factual allegations are insufficient and at most give rise to a mere possibility that Ashley's advertisements are literally false. It argues that Value City's ODTPA and Lanham Act false advertising claims therefore fail to meet the pleading standard established by *Twombly* and *Iqbal* and must be dismissed.

Value City maintains that it has plausibly pleaded its false advertising claims.  It contends that

> It is reasonable to infer, for example, that serial offers of a "one day only" "limited quantity" sale on the same item are false and deceiving. It is reasonable to infer that "compare" prices that yo-yo up and down

_____

> through January 2012, the Ashley Counterclaim Defendants caused, approved, permitted, authorized, and/or ratified placement of numerous advertisements offering for sale a particular sofa at offering prices of $399, $398, or $388, depending on the advertisement, and making various additional representations, stating in some advertisements that the "compare" price for the item was $899.99 while in other advertisements that the "compare" price was $999.99. During this time frame and depending on the advertisement, the purported "compare" price seesawed between $899.99 and $999.99. One advertisement placed in June 2010 offered this sofa for $398 and stated "Save $132," without identifying the nature of the price that was $132 higher, such as whether it referred to a former Ashley price or another retailer's price.

Amend. Counterclaim ¶ 94, ECF No. 72.

> are not actual prices of comparable items at a competing retailer. It is also reasonable to infer that a "compare" price that suddenly zooms up by $800 is not based on bona fide sales of a comparable item at a competing retailer.

Mem. Opposition 18–19, ECF No. 119.

The Court finds that Value City has failed to plausibly plead a claim for false advertising based on literal falseness. Ashley is correct that Value City's allegations give rise to an inference that Ashley *possibly* engaged in false advertising, but the claim falls short of meeting the plausibility standard. First, Value City's core argument is that prices in the advertisements changed over time. But there are myriad possible explanations for price changes that do not involve false advertising. Businesses routinely adjust the prices of their products. The same is true of the allegedly successive one-day and limited quantity sales. Supplies might be limited at one point in time but not at a later date. Consequently, Value City's allegations do no more than raise a suspicion that Ashley engaged in false advertising.

Ashley's failure to identify the nature of the comparison price renders the advertisements ambiguous in that respect. If a consumer does not understand the nature of the higher comparison price, it follows the representation of that price is ambiguous. Similarly, the meaning and significance of "one-day" and "limited quantity" are ambiguous. The meaning of those terms is unclear. Does "one day" mean never again or not for a long time or just that the sale lasts one day? Does "limited quantity" mean limited temporarily or forever? As such,

Ashley's alleged failure to identify the nature of the comparison price and its advertisements of successive one-day or limited quantity sales do not plausibly meet the standard for literal falsehood. *See Innovation Ventures, LLC v. N.V.E, Inc.*, 694 F.3d 723, 737 (6th Cir. 2012) (only an unambiguous message can be literally false). When a claimant shows literal falsity, it is entitled to a presumption that the representation was material. *Id*. If the representation is ambiguous, however, the materiality element must be satisfied. *Id*.

One of the alleged misrepresentations could constitute literal falsity: the representation that Ashley's advertised prices are sales prices when in fact they are its regular prices. And the Court agrees with Value City that allegations based upon "information and belief" do not necessarily fail the *Twombly/Iqbal* standard. Nonetheless, in this instance, Value City's bald assertion that Ashley's sale prices are actually its regular prices is conclusory and speculative. Value City's counterclaim does not include any additional factual assertions that would indicate this particular allegation is plausible.

Furthermore, the Court rejects Value City's suggestion that additional facts are not required because the evidence that might support its allegations is uniquely in the possession of Ashley. Since *Iqbal*, the Sixth Circuit Court of Appeals has flatly rejected the notion that insufficient pleading may be excused because the specific facts are solely in the possession of the defendant. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir.

2011) (rejecting argument that complaint should not have been dismissed as deficient because pricing information was solely in possession of the defendant). In sum, Value City has failed to plead a plausible claim of false advertising based on literal falsity.

Ashley also contends that Value City has failed to plead all of the elements of its ODTPA and Lanham Act false advertising claims with respect to the representations that are not literally false. Specifically, Ashley argues that Value City has failed to plausibly plead facts to support the essential element of materiality, i.e., that the purportedly false advertisements were material and influenced consumers' purchasing decisions. Moreover, Ashley contends Value City has not pleaded a causal link between the alleged false statements and any harm suffered by Value City.

Value City maintains that because Ashley's advertisements were literally false, Value City is not required to plead materiality, that the advertisements deceived consumers, or a causal connection between the allegedly false statements and injury to Value City. The Court, however, has found that Value City has failed to plausibly plead literal falsity. The one category of representations about price that could arguably be literally false is pleaded in an entirely conclusory fashion. The remaining representations are not literally false.

Consequently, Value City was required to plead facts to plausibly support the other elements of its false advertising claims. *Aquashield, Inc. v. Sonitec*

*Vortisand, Inc.*, No. 1:13–cv–119, 2013 WL 5524598, at *7 (E.D. Tenn. Oct. 4, 2013) (Lanham Act plaintiff must plausibly plead elements of consumer deception and materiality although it need not plead specific dates of advertisements).

Value City suggests that Ashley improperly seeks to require Value City to plead "magic words" or satisfy a heightened pleading requirement. Value City's suggestion mischaracterizes Ashley's argument. Rather, Ashley argues that Value City has failed to plausibly plead essential elements of its false advertising claim. Although Value City appears to deny that pleading requirement, it is in fact well-established. "To state a valid claim, a complaint must contain either direct or inferential allegations respecting *all the material elements* to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis added) (citing *Twombly*, 550 U.S. at 562).

Here, Value City makes no effort to plausibly plead the essential element of materiality in connection with the representations in the advertisements that were not literally false. It likewise fails to plead any facts to plausibly support an inference of a causal link between Ashley's advertisements and an injury to Value City. Its false advertising claims therefore fail.

In sum, Value City's conclusory allegation is insufficient to support a false advertising claim based on literal falsity. In addition, Value City's failure to plead any facts supporting the essential elements of materiality and causality preclude

a false advertising claim based on statements in Ashley's advertisements that are not literally false. Ashley is therefore entitled to dismissal of Value City's false advertising claims.

## IV. DISPOSITION

For the above reasons, the Court **GRANTS** Ashley's motion to dismiss Value City's amended counterclaim. The Court **DISMISSES** Value City's counterclaim in its entirety **WITH PREJUDICE.**

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**